## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LORI SHEM-TOV,

    *Plaintiff*,

  v.

DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants.*

Civil Action No. 17-2452 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Lori Shem-Tov, who is currently being criminally prosecuted in Israel, filed this Freedom of Information Act ("FOIA") action against Defendants the Criminal Division of the U.S. Department of Justice ("Justice Department"), the Department of Homeland Security ("DHS") and INTERPOL Washington ("Interpol Washington" or "USNCB"). Dkt. 1. She seeks the release of records of Defendants' communications with the Israeli government regarding the requests of Israeli law enforcement for assistance from the United States under the Treaty on Mutual Legal Assistance in Criminal Matters ("MLAT") between the United States and Israel. Dkt. 1-4 at 2–3. She also seeks records of Defendants' efforts to secure information pertaining to several blogs from Automattic, Inc. *Id.*

Defendants DHS and Interpol Washington now move for summary judgment, asserting that they have completed reasonable searches for records responsive to Plaintiff's requests and have either released the responsive documents or withheld them in whole or in part in accordance with various FOIA exemptions. Dkt. 34. The Court has also construed Plaintiff's opposition to Defendants' motion for summary judgment as her own cross-motion for summary judgment as to those two Defendants. Dkt. 41; Minute Order (Aug. 9, 2019) (treating Plaintiff's

opposition to Defendants' motion for summary judgment as a cross-motion for summary judgment).  The Justice Department, however, remains engaged in searching for and producing responsive records, *see* Dkt. 59, and therefore does not participate in the instant motion.  For the most part, Plaintiff does not take issue with the methodologies of the searches Defendants performed but, instead, confuses the completed searches conducted by DHS and Interpol Washington with the search still being conducted by the Justice Department and then faults the Justice Department's (not yet completed) search.  She also argues that, as a criminal defendant in the Israeli case, she is entitled to all relevant documents in the possession of all Defendants under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Court concludes that DHS and Interpol Washington have carried their burdens of establishing that they performed adequate searches for documents responsive to Plaintiff's FOIA requests and have demonstrated that some of their withholdings were proper under the FOIA exemptions.  The have failed, however, to satisfy their summary judgment burden of demonstrating that their withholdings of information pursuant to Exemption 7(D) were appropriate.  Accordingly, the Court will **GRANT** in part and **DENY** in part Defendants' motion for summary judgment, Dkt. 34; and will **DENY** Plaintiff's cross-motion for summary judgment, Dkt. 41.

## I.  BACKGROUND

Plaintiff attests that she is a "journalist specializing in welfare stories since 2009."  Dkt. 41-1 at 1 (Shem-Tov Decl. ¶ 2).  She states that she was "arrested in Israel on charges of 'insulting public officials'" in February 2017, *id.* (Shem-Tov Decl. ¶ 3), and asserts that the Israeli government has improperly handled her case in numerous ways, including subjecting her to a "political arrest" that was "intended to coerce [her] into changing [her] position on

corruption in the Israeli welfare and justice systems," *id.* (Shem-Tov Decl. ¶ 4).  Defendants

offer a different account of Plaintiff's criminal case in Israel.  They claim that she "disparage[d]

judicial and government officials and private persons who had any role in the . . . proceedings" in

which she lost custody of her children and that she "published [on the internet] personal

information about those . . . persons" and accused them on her blog "of sexually or physically

abusing" children.  Dkt. 47 at 1.  This alleged misconduct, according to Defendants, "forms the

basis of the criminal prosecution of Plaintiff under Israeli law."  *Id.* at 2.

All agree that Israeli law enforcement authorities submitted a request to the United States

pursuant to the Treaty on Mutual Legal Assistance in Criminal Matters ("MLAT") between the

two countries, seeking aid in the Israeli criminal investigation of Plaintiff.  *See* Dkt. 34 at 1; Dkt.

41-1 at 2 (Shem-Tov Decl. ¶ 8).  Various U.S. government agencies appear to have been

involved in rendering that assistance, at least in part by asking third parties to release to them

information including "sites" or "blogs" maintained by certain "user[s]."  *See, e.g.*, Dkt. 34-1 at

26, 37, 40, 44, 52, 61; *see also* Dkt. 34-2 at 22, 24–25, 28, 31–33; Dkt. 47-2.

On September 15, 2017, Plaintiff, through R. David Weisskopf, who she had authorized

as her "power-of-attorney . . . to make FOIA requests on her behalf," submitted to the Justice

Department, DHS, and Interpol Washington requests for records pursuant to FOIA.  Dkt. 1 at 1–

2 (Compl. ¶¶ 1, 6–7); Dkt. 1-3 at 2 (Ex. 3); Dkt. 1-4 (Ex. 4); Dkt. 1-5 (Ex. 5).  Interpol is the

International Criminal Police Organization, which "was created to ensure and [to] promote the

widest possible mutual assistance between all criminal police authorities within the limits of the

law existing in the organization's member countries."  Dkt. 34 at 4 (Def.'s SUMF ¶ 1).  Each

Interpol "member country designates a national law enforcement agency . . . as the member

country's point of contact for all Interpol matters."  *Id.* at 4–5 (Def.'s SUMF ¶ 2).  The United

States has designated the National Central Bureau ("USNCB") as its point of contact.[1]  *Id.*

USNCB is itself a component of the Department of Justice.  *See id.* at 5 (Def.'s SUMF ¶ 3).

Plaintiff's FOIA request sought the following:

> 1.  Any correspondence and records exchange[d] between the State of Israel and U.S. Department of Justice (DOJ) and/or Department of Homeland Security (DHS) and/or Interpol concerning the request of the Government of Israel pursuant to Article 7 of the Treaty on Mutual Legal Assistance in Criminal Matters related to data from WordPress.com web blogs, and release of such data to the DOJ, DHS, [Interpol] and/or the Israeli Ministry of Justice and/or the Israeli Police including application, attachment, responses, emails and all proof attached.

> 2.  All correspondence exchanged between the DOJ and/or DHS and/or Interpol and Automattic Inc. concerning the web blogs:
>     http://lory-shemtov.com
>     http://mishpatsheker.com
>     http://mother-cry.com
>     http://motileybel.com
>     http://horimisrtael.wordpress.com
>     http://rackmanbarilan.wordpress.com
> including demands and letters, Automattic's responses and anything exchanged regarding these web blogs.

> 3.  Any correspondences received or exchanged with third parties regarding these web blogs accounts, including, but not limited to, other officials in the DOJ, DHS, Interpol, Israeli or American diplomats, politicians, officials in embassies or foreign offices relating to or in any way mentioning your activity vis a vis Automattic's above mentioned web blogs.

> 4.  Any legal opinions composed by the DOJ, DHS, Israeli officials or Interpol concerning the mutual legal assistance and whether there are sufficient grounds for the U.S. to invoke section 2703 and act on behalf of the Government of Israel.  I specifically request records clarifying why assistance to a foreign government relying on criminal offenses not recognized in the U.S. outweigh a journalist's Freedom of Expression protected under the First Amendment to the U.S. Constitution in this matter.

> 5.  All records, including but not limited to notes, from the day of initial contact by the Government of Israel regarding the Automattic Inc. web blogs.  I also request all records by anybody from the U.S. authorities concerning the

---

[1]  Because of this structure, the Court will refer to Defendant Interpol Washington and USNCB interchangeably.

handling of the request from Israel, including but not limited to OIA Ref: 182-54139.

6.   All records of any application to any court or judicial authority to issue a search warrant or any other type of warrant to compel Automattic Inc., to release any documents preserved related to any criminal investigations against Ms. Shem-Tov.  If no application to a court was made, any document or legal opinion why such application was denied.

Dkt. 34-1 at 9 (Dembkowski Decl. ¶ 19).

At the time that Plaintiff submitted her FOIA request (and at the time she initiated this suit), she was incarcerated in Israel pending trial.[2]  Dkt. 1 at 2 (Compl. ¶ 4).  She sought the requested records "for use to defend herself in [her] criminal trial."  *Id.*  On September 19, 2017, DHS initially responded that Plaintiff's request was overly "broad in scope or did not specifically identify the records" sought and asked that Plaintiff resubmit a narrowed request.  Dkt. 1-7 at 2–3 (Ex. 7).  The other Defendants also failed substantively to respond to her request.  Dkt. 1 at 2 (Compl. ¶¶ 8–10); Dkt. 1-8 (Ex. 8) (Sept. 21, 2017 Interpol Washington Response).  Plaintiff alleges that, on October 2, 2017, Weisskopf filed an administrative appeal based on Defendants' failures to release records in response to her FOIA request.  Dkt. 1 at 2 (Compl. ¶¶ 6, 11); Dkt. 1-10 (Ex. 10).  Interpol Washington later informed Plaintiff that it had at least 72 responsive pages and released 45 of those pages to her with some information redacted pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(D).  Dkt. 1 at 3 (Compl. ¶¶ 12–13); Dkt. 1-11 at 3 (Ex. 11) (Oct. 10, 2017 Interpol Washington Response).  Interpol Washington also redacted and then forwarded to DHS 16 pages that it had uncovered so that DHS could determine whether their release was appropriate.  Dkt. 1 at 3 (Compl. ¶ 13); Dkt. 1-11 at 4 (Ex. 11) ("The remaining 16

---

[2]  Plaintiff has since been released from physical custody in Israel.  Dkt. 41 at 10.

pages concern[] [DHS], Immigration and Customs Enforcement (ICE).  [The agency] is referring

these documents to ICE for determination of releasability in accordance with the FOIA.").

On November 13, 2017, Plaintiff initiated this FOIA action against the Justice

Department, DHS, and Interpol Washington.  Dkt. 1 at 1.  She alleged that Defendants had

violated the FOIA by failing to respond to her FOIA request, withholding some documents, and

redacting certain portions of other documents.  Dkt. 1.  She further alleged that Defendants

violated her rights as a criminal defendant under *Brady v. Maryland* in the Israeli prosecution.

*Id.* at 2, 4 (Compl. ¶¶ 5, 13(g)).

Plaintiff moved for summary judgment and a temporary injunction on November 14,

2018, Dkt. 19 at 1, and Defendants opposed Plaintiff's motion, Dkt. 29.  On May 31, 2019,

Defendants DHS and Interpol Washington filed their own motion for summary judgment.  Dkt.

34.  On the same day, the third Defendant, the Justice Department, informed the Court that it had

not yet "finished processing plaintiff's FOIA request to it."  Dkt. 35 at 1.  The Court then ordered

Plaintiff to respond to DHS and Interpol Washington's motion for summary judgment.  Dkt. 36.

On August 1, 2019, Plaintiff filed her response.  Dkt. 41.  Soon thereafter, the Court

> denie[d] without prejudice Plaintiff's [November 14, 2018] motion for summary
> judgment[,] [which asked the Court to order] the release of all records requested
> under FOIA, on the ground that the motion was premature in light of (1) the
> documents that Defendants have since released to Plaintiff, (2) the ongoing
> process described in the latest status report submitted by the Department of
> Justice, and (3) the fact that two of the [D]efendants have now set forth the
> grounds for their withholdings [in their own motion for summary judgment].

Minute Order (Aug. 9, 2019).  The Court announced that it would "treat Plaintiff's opposition,

Dkt. 41, to Defendants' motion for summary judgment as a cross-motion for summary

judgement as to the Department of Homeland Security and Interpol Defendants."  *Id.*  It noted

that it would allow Plaintiff to "file an additional motion for summary judgment as to the Department of Justice when the ongoing process is complete." *Id.*

Defendants DHS's and Interpol Washington's motion for summary judgment, Dkt. 34, and Plaintiff's cross-motion for summary judgment, Dkt. 41, are ripe for decision. The remaining Defendant, the Justice Department, in contrast, remains engaged in searching for, processing, and releasing responsive documents to Plaintiff, *see* Dkt. 35, Dkt. 57, and therefore has not participated in the instant motion.

## II.  LEGAL STANDARD

Under FOIA, when an agency receives a request that "reasonably describes" records sought, 5 U.S.C. § 552(a)(3)(A), it must "conduct[] a search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency must produce to the requester responsive records but may withhold material that falls within one of FOIA's nine statutory exemptions. *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In considering a motion for summary judgment, the Court must review the record de novo to determine whether there remains a genuine dispute of material fact concerning the reasonableness of the searches performed or the propriety of any withholdings. *Cause of Action Inst. v. IRS*, 316 F. Supp. 3d 99, 105 (D.D.C. 2018). An agency proves its entitlement to summary judgment through affidavits or declarations, including a *Vaughn* index, explaining its

searches and withholdings.  *See Wilson v. DEA*, 370 F. Supp. 2d 282, 284 (D.D.C. 2005).  "The [C]ourt may grant summary judgment based on information provided in an agency's affidavits or declaration[s] when they are relatively detailed and non-conclusory and not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 6 (D.D.C. 2017) (internal quotations and citations omitted). When a FOIA requester opposes a motion for summary judgment or cross-moves for summary judgment, mere conclusory or speculative statements contradicting the factual content of the defendant's affidavits or declarations will not suffice; instead, the plaintiff must offer countervailing "affirmative evidence."  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001); *see also id.* (quoting *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1030 (5th Cir. 1983)) ("A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment.").

## III.  ANALYSIS

Defendants argue that they are entitled to summary judgment because they have demonstrated that (1) they conducted searches reasonably calculated to uncover all responsive documents; and (2) any withholdings of responsive documents were properly made pursuant to the FOIA exemptions.  Plaintiff's arguments are largely unresponsive to Defendants' contentions.  Her cross-motion primarily asserts that: (1) there are additional responsive documents owed to her by the Justice Department; and (2) she is entitled to all documents in Defendants' possession based on her rights as a criminal defendant under *Brady v. Maryland*.

The Court cannot deem Defendants' motion for summary judgment "conceded" due to the lack of on-point opposition, however, and must instead evaluate "for itself whether the record

and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (second quote quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)).  The Court will, accordingly, determine (1) the adequacy of the searches performed, and (2) the propriety of the withholdings.  In doing so, it will address Plaintiff's arguments where they are relevant to those questions.  It will then address Plaintiff's remaining arguments.

## A.      Search Adequacy

"An agency fulfills its obligations under FOIA to conduct an adequate search 'if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" *Canning v. U.S. Dep't of State*, 346 F. Supp. 3d 1, 13 (D.D.C. 2018) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 2d 321, 325 (D.C. Cir. 1999)).  Affidavits and declarations offered to demonstrate the reasonableness of the search performed must be "'relatively detailed' and nonconclusory' and . . . submitted in good faith." *Weisberg*, 705 F.2d at 1351 (D.C. Cir. 1983) (citations omitted).  Although no single formula governs every case, the required details often "include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search." *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001).

Once the agency has provided adequate explanations of the searches conducted, "the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search.'" *Pinson v. Dep't of Justice*, 313 F. Supp. 3d 122, 126 (D.D.C. 2018) (quoting *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).  Courts afford agencies' declarations "a presumption of good faith" which the plaintiff's "purely speculative claims about the existence and discoverability of other

documents" alone will not undermine.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (second quote quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

1.    *Interpol Washington (USNCB)*

Interpol Washington has carried its summary judgment burden of demonstrating that its search in response to Plaintiff's FOIA request was adequate.  In support of its motion for summary judgment, Interpol Washington submitted the declaration of Daniel P. Dembkowski, a "Government Information Specialist for . . . [Interpol] Washington, U.S. National Central Bureau" who is "assigned to duties relating to the [FOIA] and Privacy Act," Dkt. 34-1 at 1 (Dembkowski Decl. ¶ 1), and is "familiar with the USNCB's procedures for responding to requests under the FOIA," *id.* at 2 (Dembkowski Decl. ¶ 5).  "The USNCB system of records consists of electronic and hard copy records of criminal and non-criminal case files."  Dkt 34-1 at 5 (Dembkowski Decl. ¶ 11).  USNCB also "maintains administrative files consisting of non-investigative topical files of hard copies of records and correspondence; for example, files of FOIA requests and responses, records of litigation documents, and documents related to various policy issues."  *Id.* (Dembkowski Decl. ¶ 12).  USNCB further explains that, in response to FOIA requests, it searches for records using "computerized queries" in "two separate search engines: 1) 'Envoy Database Search', and 2) 'USNBC Case Document Search'."  *Id.* at 6 (Dembkowski Decl. ¶ 13).  The first search engine searches previously indexed information about investigative requests "such as[] names of individuals (including suspects, witnesses, victims) . . . , etc."  *Id.*  The second search engine "is a web-based database search that finds any word or word sets located within Envoy cases, provided the term is contained in [files in certain formats]."  *Id.*  After Defendant queries these search engines, the resulting "files are then

examined for information and documents responsive to the FOIA request," and additional

searches are performed of USNCB administrative files.  *Id.* at 7 (Dembkowski Decl. ¶ 13).

The Dembkowski declaration explains that "any potential records" that were responsive

to the first five categories of information that Plaintiff sought "would constitute investigative and

administrative records" and that "[r]equests for investigative assistance from domestic and

foreign law enforcement agencies are transmitted to the USNCB's Command Center," at which

point "the Command Center opens a case in Envoy and indexes appropriate information."  Dkt.

34-1 at 10 (Dembkowski Decl. ¶ 21).  The request is also "dispatched to the appropriate USNCB

division and assigned to a staff analyst or detailed agent."  *Id.* at 10–11 (Dembkowski Decl. ¶

21).  Dembkowski further avers that "the USNCB does not maintain" records falling into the

sixth category of information sought by Plaintiff, so it did not search for such records.  *Id.* at 11

(Dembkowski Decl. ¶ 21); *id.* at 9 (Dembkowski Decl. ¶ 19) (sixth request category covered

"[a]ll records of any application to any court or judicial authority to issue a search warrant or any

other type of warrant to compel Automattic Inc., to release any documents preserved related to

any criminal investigations against . . . Shem-Tov" and "if no application to a court was made,

any document or legal opinion why such application was denied").

Upon receiving Plaintiff's September 15, 2017 FOIA request, *see* Dkt. 34-1 at 8–9

(Dembkowski Decl. ¶¶ 17, 19) (detailing Plaintiff's FOIA request), USNCB ran a set of search

terms through both USNCB search engines.  Dkt. 34 at 8 (Def's SUMF ¶ 16); *see also* Dkt. 34-1

at 11 (Dembkowski Decl. ¶ 22) (listing search terms used, which included "Lori Shem Tov,"

"WordPress.com," and "Automattic Inc.," among others).  USNCB also searched its

administrative files using the same search terms.  Dkt. 34-1 at 11 (Dembkowski Decl. ¶ 22).

USNCB located seventy-two total pages of responsive documents, including records responsive

to the first, second, third, and fifth categories of information that Plaintiff sought. *Id.*

(Dembkowski Decl. ¶ 23). It released forty-five of those pages with partial redactions. *Id.* at 12

(Dembkowski Decl. ¶ 23). Sixteen pages "originated from ICE," so USNCB redacted some

information in them and then "referred [them] to that agency for review and direct response" to

Plaintiff. Dkt. 34 at 8 (Def.'s SUMF ¶ 17). Eleven pages "originated with a foreign National

Central Bureau and were withheld in full." *Id.*

The Dembkowski declaration, which Plaintiff has not challenged with respect to the

adequacy of the searches it describes, offers a detailed explanation of which "files [and

databases] [were] likely to contain responsive materials," and "set[s] forth the search terms and

the type[s] of search[es] performed." *Valencia-Lucena*, 180 F.3d at 325–26. The Court

concludes that it establishes "beyond material doubt that [Interpol Washington's] search was

reasonably calculated to uncover all relevant documents." *Id.* The Court will, accordingly, grant

Interpol Washington's motion for summary judgment with respect to the adequacy of its search.

2.      *DHS (ICE)*

The Court concludes that DHS has also carried its summary judgment burden of

establishing that it conducted an adequate search in response to Plaintiff's FOIA request. DHS

supports its motion for summary judgment with the declaration of Toni Fuentes, Deputy Officer

of ICE's FOIA Office, who is "immediately responsible for supervising ICE responses to

requests for records under the [FOIA]." Dkt. 34-2 at 1 (Fuentes Decl. ¶ 1).

DHS asserts that "[b]y a letter dated September 9, 2018, [its] Privacy Office ("DHS

Privacy") referred the FOIA request it had received to ICE for processing." Dkt. 34 at 15 (Def.'s

SUMF ¶ 40). "ICE is the principal investigation arm of DHS and the second largest

investigative agency in the federal government." *Id.* at 17 (Def.'s SUMF ¶ 50). ICE's FOIA

Office "determined that[,] because of the subject matter of [Plaintiff's] FOIA request," its Office of Homeland Security Investigations ("HSI") was the only office "likely to have" responsive records.  Dkt. 34 at 18 (Def.'s SUMF ¶ 51); Dkt. 34-2 at 5 (Fuentes Decl. ¶ 16).  "HSI investigates domestic and international activities that arise from the illegal movement of people and goods into, within, and out of the United States. . . .  In addition to criminal investigations, HSI oversees ICE international affairs questions and intelligence functions."  Dkt. 34 at 18 (Def.'s SUMF ¶ 52).

HSI's Records and Disclosure Unit's ("RDU") FOIA/Privacy Act Section Chief "reviewed the request, relying on subject matter expertise and knowledge of the program offices' activities, and determined that the Cyber Crimes Center ('C3') should be tasked to conduct a search."  Dkt. 34 at 19 (Def.'s SUMF ¶ 55); Dkt. 34-2 at 6 (Fuentes Decl. ¶ 19).  C3 works to "combat[] crimes committed on, or facilitated by, the Internet."  Dkt. 34 at 19 (Def.'s SUMF ¶ 56).  The FOIA point of contact within C3 "reviewed the substance of [Plaintiff's] request and, based on their experience and knowledge of their office's practices and activities," tasked five HSI Special Agents to conduct searches for potentially responsive documentation.  Dkt. 34 at 20 (Def.'s SUMF ¶ 56).  Those five agents searched "their computers, including their desktops, hard drives, and shared drives, as well as their . . . email accounts" for 3.5 hours.[3]  Dkt. 34 at 20 (Def.'s SUMF ¶ 57).  The Fuentes declaration provides the list of search terms that these five HSI special agents used, which included Plaintiff's name, "Automattic," "wordpress," and the

---

[3]  The Fuentes declaration explains that "ICE employees maintain records in several ways" and that their determinations of "how to conduct any necessary searches [of their records] is necessarily based on the manner in which the employee maintains his/her files."  Dkt. 34-2 at 4 (Fuentes Decl. ¶ 12).

names of the various blogs referenced in Plaintiff's FOIA request.  Dkt. 34-2 at 7 (Fuentes Decl.

¶ 21).

The special agents did not uncover "any additional responsive records outside of the 16

pages of records that [Interpol] Washington referred to ICE on this FOIA request," and therefore

"HSI RDU provided a 'no additional records' response to ICE FOIA."  Dkt. 34 at 20 (Def.'s

SUMF ¶ 57).  In September 2018, ICE informed Plaintiff that the search of HSI had uncovered

no records responsive to her request.  Dkt. 34 at 15 (Def.'s SUMF ¶ 41).

The Fuentes declaration, which provides a reasonably detailed account of the DHS

search, including the specific DHS subdivision searched, the file locations searched, and the

search terms used, establishes that DHS conducted a search reasonably calculated to discover all

records responsive to Plaintiff's FOIA request.  *See Valencia-Lucena*, 180 F.3d at 325–26.

Plaintiff does not raise any specific challenges to the adequacy of the search performed by DHS.

Accordingly, the Court will also grant Defendant DHS's motion for summary judgment with

respect to the adequacy of its search.

**B.      Withholdings Pursuant to FOIA Exemptions**

In moving for summary judgment on the lawfulness of its withholdings, a defendant must

proffer supporting declarations that "describe the requested documents and 'the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by bad faith.'"  *Pronin v. Fed. Bureau of Prisons*, 17-1807, 2019 WL

1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C.

Cir. 2009)); *see also Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  The Court may

grant summary judgment only if these declarations "afford the FOIA requester a meaningful

opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).

The Court first assesses USNCB's withholdings and then proceeds to analyze DHS's withholdings. The Court concludes that Defendants have adequately demonstrated that FOIA Exemptions 7(C) and (E) justify some of their withholdings but that their explanation for withholding information provided by a foreign National Central Bureau ("NCB") under Exemption 7(D) is, at least on the present record, insufficient to satisfy their summary judgment burden. The Court need not reach the validity of the Exemption 6 withholdings, which overlap with the Exemption 7(C) withholdings.

2.      *USNCB records*

USNCB redacted in part the forty-five pages that it released to Plaintiff and withheld in full eleven pages that "originated with a foreign National Central Bureau" pursuant to the FOIA Exemptions 6, 7(C), and 7(D). Dkt. 34 at 8 (Def.'s SUMF ¶ 17); Dkt. 34-1 at 12 (Dembkowski Decl. ¶ 23).

a.      Exemption 7 Threshold

In order to evaluate whether Exemptions 7(C) and (D) justify Defendant's withholdings, the Court must first determine whether the records in question satisfy Exemption 7's threshold requirement. Under 5 U.S.C. § 552(b)(7), "FOIA exempts from disclosure six categories of documents that have been 'compiled for law enforcement purposes.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting 5 U.S.C. § 552(b)(7)(A)–(F)). "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." *Pub. Emps. for Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). In assessing whether records were compiled for law

enforcement purposes, "it is not the nature of the agency that controls, but the character of the records withheld." *Elkins v. FAA*, 99 F. Supp. 3d 90, 98 (D.D.C. 2005).

Interpol Washington argues that the records in question meet Exemption 7's threshold requirement because they are "[r]equests from foreign [National Central Bureaus ("NCB")] and the information received and exchanged with those foreign NCBs" reflects "respon[ses] to inquiries from foreign law enforcement agencies for sensitive information gathered in the United States for law enforcement purposes." Dkt. 34-1 at 14–15 (Dembkowski Decl. ¶ 31) (citing 22 U.S.C. § 263a). The Court agrees that Interpol Washington has satisfied its burden to demonstrate that the records in question were compiled by USNCB for law enforcement purposes, namely to aid Israeli law enforcement authorities with their criminal investigation and prosecution of Plaintiff. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Plaintiff does not dispute Defendant's assertion that requests from and responses to foreign NCBs engaged in law enforcement activities are compiled for law enforcement purposes. Rather, she responds generally that Defendants' withholding of some documents due to "an ongoing law enforcement investigation or surveillance" is improper because she "was already indicted and . . . incarcerated by April 2017 and therefore the law enforcement investigation that the Defendants invoke ended over two years ago." Dkt. 41 at 2–3; *see also* Dkt. 41-1 at 4 (Shem-Tov Decl. ¶ 17). Plaintiff's argument confuses the threshold requirement for application of Exemption 7 with the further requirement of Exemption 7(A), which "is temporal in nature" and can only be invoked in relation to "a concrete prospective law enforcement proceeding," *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) (second quote quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008)). The records compiled need not be associated with an "ongoing law enforcement investigation" for the FOIA

law enforcement exemptions invoked here, which do not include Exemption 7(A), to apply. Plaintiff's argument also fails even on its own terms.  Simply because Plaintiff has already been indicted and was detained pre-trial does not mean that the Israeli law enforcement proceedings against her "ended over two years ago," Dkt. 41 at 2–3, and are not ongoing, *see Stein v. SEC*, 358 F. Supp. 3d 30, 34–35) (D.D.C. 2019) (holding that Exemption 7(A) continued to apply while a criminal appeal had not yet concluded).  As far as the Court is aware, Shem-Tov's criminal case is ongoing.  *See* Dkt. 58 at 1.

> b.   Exemption 7(C)

Interpol Washington asserts that it withheld the names of Federal law enforcement employees, non-law enforcement third parties, and USNCB support employees, as well as information by which the individuals in those three groups could be identified, based on privacy concerns.  Dkt. 34 at 10 (Def.'s SUMF ¶ 22).  It also withheld "information related to non-law enforcement third parties by which those individuals could be identified."  *Id.*  Interpol Washington invokes FOIA Exemptions 7(C) and 6 in support of these withholdings, and the Dembkowski declaration presents a "consolidated discussion" of the privacy and public interests implicated by the redactions made pursuant to both exemptions.  Dkt. 43-1 at 16 (Dembkowski Decl. ¶ 39 n.1).  Because the Court concludes that Exemption 7(C) covers all of the withheld personal information, it does not assess the applicability of Exemption 6.  *See Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018) (observing that an agency "may withhold documents or portions thereof as long as one exemption applies").

Exemption 7(C) "bars disclosures that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *Campbell*, 164 F.3d at 33 (quoting 5 U.S.C. § 552(b)(7)(C)).  To determine whether an agency lawfully withheld or redacted records

pursuant to Exemption 7(C), the Court must balance the privacy interest asserted against the "public interest in disclosure and determine[] whether the interest is strong enough to warrant an invasion of the privacy interest at stake." *Taplin ex rel. Lacaze v. U.S. Dep't of Justice*, 967 F. Supp. 2d 348, 354 (D.D.C. 2013) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989)). The public interest in disclosure must be "significant" and "more specific than having the information for its own sake." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The Court concludes that the privacy interests asserted outweigh any unasserted public interest in the withheld information. First, the personal information withheld implicates legitimate privacy interests. The D.C. Circuit has held that privacy-oriented FOIA exemptions apply to "bits of personal information such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 148 (D.C. Cir. 2006); *see also Cause of Action Inst. v. U.S. Dep't of the Army*, 16-cv-1020, 2019 WL 4750213, at *9 (D.D.C. Sept. 29, 2019) ("Low-level [government] personnel . . . have at least some privacy interest in their names."); *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant."). It has also "held that not only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'" *Roth*, 642 F.3d at 1174 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003)). Second, Plaintiff has not asserted a countervailing public interest in the names and other personal identifying information that Defendant has withheld, and none is otherwise evident. The Court's balancing leads it to conclude that the recognized interests in

government employees' and third parties' privacy outweighs any unasserted public interest in this information.

Plaintiff makes two arguments, but neither alters the Court's analysis.  First, she asserts that that "[t]he names of the officials on both the Israeli side and the American side are public information."  Dkt. 41-1 at 3 (Shem-Tov Decl. ¶ 12).  To demonstrate that the individuals' privacy interests have been waived, however, Plaintiff would have to show that the information "(1) is 'as specific as the information previously released'; (2) 'match[es] the information previously disclosed'; and (3) 'was made public through an official and documented disclosure.'"  *Boehm v. FBI*, 948 F. Supp. 2d 9, 30–31 (D.D.C. 2013) (quoting *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 165 (D.D.C. 2012)).  Plaintiff's vague and conclusory statement about the names of some "officials" already being public does not come close to passing this test.  Second, Plaintiff challenges the redactions by asserting that none of the records are medical in nature.  Dkt. 41-1 at 3 (Shem-Tov Decl. ¶ 13).  Even if that is true, it does not advance Plaintiff's position because the reach of Exemption 7(C) is not limited to medical records.  *See* 5 U.S.C. § 552(b)(7)(C).

   c. <u>Exemption 7(D)</u>

Interpol Washington invokes Exemption 7(D) in withholding eleven full pages and portions of other pages associated with an "investigative assistance and MLAT request" that "originated from a foreign National Central Bureau" ("NCB").  Dkt. 34-1 at 12 (Dembkowski Decl. ¶ 23); *id.* at 83–175 (*Vaughn* Index).

Exemption 7(D) bars disclosures that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record

> or information compiled by criminal law enforcement authority in the course of
> a criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  "A source counts as confidential 'if the source provided information

under an express assurance of confidentiality or in circumstances from which such an assurance

could reasonably be inferred.'"  *Borda v. U.S. Dep't of Justice, Criminal Division*, 245 F. Supp.

3d 52, 60 (D.D.C. 2017) (quoting *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 530 (D.C. Cir.

2016)).  The agency "bears the burden of proving that [Exemption 7(D)] applies."  *Labow*, 831

F.3d at 531.  When "an agency asserts that a source has 'provided information . . . under implied

[rather than express] assurances of confidentiality,' . . . the Court must consider that contention

in light of 'four factors.'"  *Borda*, 245 F. Supp. 3d at 60 (emphasis omitted).  These factors

include "the character of the crime at issue, the source's relation to the crime, whether the source

received payment, and whether the source has an ongoing relationship with the law enforcement

agency and typically communicates with the agency only at locations and under conditions

which assure the contact will not be noticed."  *Labow*, 831 F.3d at 531 (quoting *Roth*, 642 F.3d

at 1184).

Interpol Washington argues that Exemption 7(D) "justif[ies] the withholding of

information that would identify confidential sources, such as NCBs and the General Secretariat,

as well as any information they provided the USNCB."  Dkt. 34 at 14 (Def.'s SUMF ¶ 35).  It

asserts that (1) "[o]ne of the USNCB's most important functions is to respond to inquiries from

foreign law enforcement agencies for confidential source information gathered in the United

States for law enforcement purposes;" (2) USNCB also "requests foreign law enforcement

agencies to supply information that may be of interest to domestic law enforcement

organizations;" and (3) these functions come with an "expectation of confidentiality."  Dkt. 34 at

13–14 (Def.'s SUMF ¶¶ 33–34); Dkt 34-1 at 18–19 (Dembkowksi Decl. ¶ 43).  To substantiate

this claimed "expectation of confidentiality," Defendant offers two single-page Interpol resolutions from 1974 and 1988 discussing "the need to protect the confidential nature of . . . documents, information or items [relating to criminal matters] that one NCB may receive from another or from the General Secretariat" and "urg[ing] NCBs . . . to take all necessary steps to ensure that such . . . information . . . [is] used solely for crime prevention, crime investigation, and criminal proceedings."  Dkt. 34-1 at 190.

The Court concludes that Interpol Washington has not carried its burden of establishing that Exemption 7(D) applies to the withheld documents.  *Labow*, 831 F.3d at 531.  Interpol Washington's memorandum of points and authorities includes a single paragraph discussing Exemption 7(D).  Dkt. 34 at 36–37.  In relevant part, that paragraph merely asserts that "Exemption (b)(7)(D) was applied in this case by INTERPOL Washington to protect from disclosure the name(s), identifying information about, and information provided to ICE by a confidential source" and that "INTERPOL Washington accords confidential source status to requests for assistance from other members of INTERPOL."  *Id.*  Defendants' *Vaughn* index clarifies that the information at issue originated with a foreign NCB.  *See* Dkt. 34-1 at 83–175. But even with that clarification, Defendants' factual and legal submission is too sparse to permit the Court to engage in any meaningful review of the decision to withhold the records.  The Court cannot discern, for example, whether Defendants contend that any record that relates in any way to a request for information or assistance from a foreign NCB is exempt from disclosure or whether they merely contend that the exemption applies to a subset of such records, and, if so, how that subset is defined in this case.  The factual record, moreover, says nothing about whether the withheld information is, in fact, "confidential" or whether the foreign NCB or others have previously revealed some or all of the information at issue.  With respect to the law, Defendants'

21

brief is even thinner.  It says nothing, for example, about whether a foreign NCB that is *seeking* information from the USNCB or from U.S. law enforcement agencies constitutes a confidential *source* that has "furnished information," 5 U.S.C. § 552(b)(7)(D).  Likewise, it does not cite any case law relating to the application of Exemption 7(D) to Interpol; does not explicate whether Defendants are relying solely on an express assurance of confidentiality or also on an inferred assurance; and does not explain, if Defendants are indeed relying on an inferred assurance, how the four factor test is satisfied.

The Court cannot discharge its obligation to assess the lawfulness of the withholding on such sparse briefing and evidence.  The Court will, accordingly, deny Defendants' motion for summary judgment with respect to the Exemption 7(D) withholdings, but will do so without prejudice and will permit Defendants to renew their motion upon a more substantial evidentiary showing and more complete briefing.  To the extent Defendants cannot disclose information necessary to their motion without causing the very harm they seek to avoid, they may seek leave to file portions of their submission ex parte and under seal.  The Court will also deny Plaintiff's cross-motion with respect to these withholdings without prejudice, so Defendants can attempt to better justify the withholdings.

      d.   <u>Segregability</u>

"[W]ith regard to any document an agency believes falls under a FOIA exception," the agency must "separate[] the exempt from the non-exempt portions of the document, and produce[] the relevant non-exempt information.'" *People for the Am. Way Found.*, 503 F. Supp. 2d at 296 (second quote quoting *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005)).  The Court must, in turn, "make specific findings of segregability." *Stolt-Nielsen Transp. Grp., Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008).

Dembkowski avers in a conclusory fashion that Defendant "conducted a line-by-line review of each page of the materials identified as responsive to ensure that no additional information could be released" and that "[a]ll releasable information has been provided" to Plaintiff.  Dkt. 34 at 14 (Def.'s SUMF ¶ 36); Dkt. 34-2 at 13 (Dembkowski Decl. ¶¶ 40–41).  However, at this juncture the Court will not pass on the segregability of any information withheld because, as discussed above, Defendant has not yet adequately justified the considerable withholdings made pursuant to Exemption 7(D).

3.      *DHS (ICE) records*

USNCB referred sixteen pages of records to DHS for review.  Dkt. 34 at 8–9 (Def.'s SUMF ¶ 18).  In addition to USNCB's redactions to those records under Exemptions 6, 7(C), and 7(D), DHS redacted the sixteen pages pursuant to Exemptions 6, 7(C), and 7(E).  Dkt. 34-2 at 7 n.1.  The Court concludes that ICE properly redacted the records under Exemptions 7(C) and (E); that USNCB properly redacted the records under Exemption 7(C); that the Court need not consider the Exemption 6 redactions, which overlap with the Exemption 7(C) redactions; and that USNCB's explanations for its Exemption 7(D) redactions in the pages that it referred to ICE suffer the same shortcomings discussed above and therefore fail to satisfy Defendants' summary judgment burden with regard to those withholdings.

a.      <u>Exemption 7 Threshold</u>

The Court concludes that the sixteen pages in question were also compiled for law enforcement purposes.  *See Campbell*, 164 F.3d at 30; *see also* Dkt. 34-2 at 22–37.  The Fuentes declaration explains that the "records at issue pertain to the investigations conducted pursuant to DHS'[s] law enforcement authorit[y]."  Dkt. 34-2 (Fuentes Decl. ¶ 23).  The Court's review of the portions of the sixteen pages that were released confirms that the records relate to law

enforcement and supports Fuentes's description of the nature of the records at issue.  Dkt. 34-2 at 22-37.  Defendants have carried their burden of demonstrating that the records were compiled for law enforcement purposes.

       b.     Exemption 7(C)

Pursuant to Exemption 7(C), DHS withheld "the names, phone numbers, e-mail addresses, addresses, room numbers, initials, and signatures of federal law enforcement officers and other government employees" as well as similar "personally identifiable information of third parties."  Dkt. 34-2 at 9 (Fuentes Decl. ¶ 27).  Fuentes avers that "ICE gave consideration to the privacy interests of [the] federal employees in not becoming targets of harassment" due to their "access to official law enforcement investigation information."  *Id.* (Fuentes Decl. ¶¶ 28–29).  ICE redacted third party information to avoid the "unwarranted invasion of personal privacy and subject[ing] the individuals to embarrassment, harassment, and undue public attention" as well as protecting them from "identity theft" and "unwanted contact from persons that might seek to harm" them.  *Id.* at 10 (Fuentes Decl. ¶ 31).

As discussed above in the context of the Interpol Washington records, government employees and third parties have valid privacy interests in their names, addresses, and other personal information.  *See Judicial Watch*, 449 F.3d at 153; *Cause of Action Inst.*, 2019 WL 4750213, at *9; *Horner*, 879 F.2d at 875.  Disclosure of this information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Plaintiff has not asserted a "public interest in disclosure" of the names, addresses, and contact information at issue.  *Taplin*, 967 F. Supp. 2d at 354.  The Court therefore concludes that the government employees' and third parties' privacy interest trumps the unasserted public interest in their disclosure, and therefore that DHS's withholding of the information was appropriate

under Exemption 7(C).  Again, because the Court concludes that Exemption 7(C) covers all of the withheld personal information, it does not also assess the applicability of Exemption 6.  *See Cause of Action Inst.*, 330 F. Supp. 3d at 351–52 (observing that an agency "may withhold documents or portions thereof as long as one exemption applies").

        c.      Exemption 7(D)

Defendant Interpol made some redactions pursuant to Exemption 7(D) in the sixteen pages that it then referred to DHS for processing and production to Plaintiff.  *See, e.g.*, Dkt. 34-1 at 102–04) (*Vaughn* Index).  Interpol asserts that this information "originated from the foreign National Central Bureau."  *Id.* at 103–04.  For the same reasons discussed above, the Court concludes that Defendants have failed to carry their burden to demonstrate that Exemption 7(D) applies to those records.  *Labow*, 831 F.3d at 531.

        d.      Exemption 7(E)

DHS avers that "ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure information related to an internal website/url network path located at the bottom of [several pages] referred [t]o ICE by USNCB" because it "could be reasonably expected to allow a person to breach into sensitive law enforcement systems . . . and compromise the integrity of the data" within. Dkt. 34 at 26 (Def.'s SUMF ¶¶ 75–76).

Exemption 7(E) allows the withholding of law enforcement records

    to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).  This exemption "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011).  It does not "requir[e] a

highly specific burden of showing how the law will be circumvented" but, rather, "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation marks and alterations omitted).

The Fuentes declaration explains that the relevant information is "used for the purpose of indexing, storing, locating, and retrieving law enforcement sensitive information," "is not commonly known," and could be "used to decipher the meaning of codes." Dkt. 34-2 at 12 (Fuentes Decl. ¶ 38). Plaintiff does not dispute these factual assertions. The Court concludes that Defendants have met their modest burden of "demonstrat[ing] logically how the release of the [internal website/url network path] might create a risk of circumvention of the law." *Mayer Brown LLP*, 562 F.3d at 1194 (internal quotation marks and alterations omitted).

e.      Segregability

As noted above, the Court will refrain from conducting its segregability analysis because the redactions of the sixteen pages include information withheld pursuant to Exemption 7(D), and Defendants have not yet carried their burden of establishing that these withholdings are appropriate in the present case.

**C.      Plaintiff's Other Arguments**

Finally, the Court addresses two other arguments that Plaintiff advances that do not fit squarely into the FOIA framework. First, Plaintiff asserts that "[t]his case surrounds one straightforward issue," which she characterizes as "her right pursuant to [*Brady v. Maryland*] to have unobstructed access to every document in the Defendants' possession that has been used to arrest and prosecute [her]." Dkt. 41 at 1; *see also id.* at 3 ("Plaintiff's FOIA request relates to documents in the Defendants' possession that she needs to prove her innocence . . . in criminal

court.").  Plaintiff is incorrect that her FOIA request implicates *Brady v. Maryland*.  Simply put,

"the government's obligations in a FOIA case are not the same as its obligations in the

underlying criminal case."  *Petrucelli v. Dep't of Justice*, 106 F. Supp. 3d 129, 134 (D.D.C.

2015); *Mingo v. U.S. Dep't of Justice*, No. 08-2197, 2009 WL 2618129, at *2 (D.D.C. Aug. 24,

2009) (noting that the government's *Brady* obligation is not coextensive with the agency's

statutory obligations under the FOIA); *Marshall v. FBI*, 802 F. Supp. 2d 125, 136 (D.D.C. 2011).

Here, Plaintiff's assertion of her right to the records in question under *Brady* is even weaker

because the "underlying criminal case" against her, *Petrucelli*, 106 F. Supp. 3d at 134, was

brought in Israel, not in the United States.  Any entitlement that Plaintiff has to the records under

Israeli law are not properly raised in the context of her FOIA action.  *See Boyd v. Criminal Div.*

*of U.S. Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007).

Second, Plaintiff asserts that Defendants have not finished their responses to her FOIA

requests and still owe her thousands of responsive pages.  Plaintiff's declaration references

Defendants' representations in a July 15, 2019 status report that the Justice Department's

Criminal Division is still processing her FOIA request, Dkt. 41-1 at 4–5 (Shem-Tov Decl. ¶¶ 19,

22); Dkt. 39 at 2, and she repeatedly states that Defendants have in their possession "100,000

pages" of documents, *see*, *e.g.*, Dkt. 41-1 at 3 (Shem-Tov Decl. ¶¶ 14, 21), and therefore

challenges as insufficient the comparatively limited productions that she has thus far received.

In making these assertions, Plaintiff fails to distinguish between the Defendants presently

moving for summary judgment and the remaining Defendant, the Justice Department, which has

not moved for summary judgment and which continues to process and release records.  Dkt. 47

at 4 ("The remainder of the documents responsive to Plaintiff's FOIA request are currently being

processed by the Department of Justice Criminal Division.").  How many pages of responsive

records the Justice Department may or may not have and to how many of those pages Plaintiff is entitled are not questions currently before the Court.

## CONCLUSION

For the foregoing reasons, Defendants Interpol Washington's and DHS's motion for summary judgment, Dkt. 34, is hereby **GRANTED** in part and **DENIED** in part and Plaintiff's cross-motion for summary judgment, Dkt. 41; Minute Order (Aug. 9, 2019) (treating Plaintiff's opposition to Defendants' motion for summary judgment as a cross-motion for summary judgment), is hereby **DENIED**.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  May 25, 2020